1  M. ELIZABETH DAY (SBN 177125)
   eday@feinday.com
2  MARC BELLOLI (SBN 244290)
   mbelloli@feinday.com
3  **FEINBERG DAY ALBERTI LIM & BELLOLI LLP**
   1600 El Camino Real, Suite 280
4  Menlo Park, CA 94025
   Tel:  650.618.4360
5  Fax:  650.618.4368

6  Attorneys for Defendant
   Pantheon Systems Inc.
7

8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10

11  EXPRESS MOBILE, INC.,                      CASE NO. 3:18-CV-04688-RS

12              Plaintiff,                      **DEFENDANT'S MOTION TO DISMISS
                                                COUNTS I AND II OF PLAINTIFF'S
13       v.                                     FIRST AMENDED COMPLAINT**

14  PANTHEON SYSTEMS INC.,                      Date:        December 13, 2018
                                                Time:        1:30 p.m.
15              Defendant.                      Courtroom:   3, 17th Floor
                                                Judge:       Hon. Richard Seeborg
16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 2

II.     STATEMENT OF FACTS .................................................................................... 2

III.    THE § 101 ANALYSIS ......................................................................................... 4

IV.     ARGUMENT ......................................................................................................... 6

        A.   The Asserted Claims Fail *Alice* Step One Because They Are Directed To The Abstract
        Idea Of Creating and Displaying Webpages Based Upon Information From A User ................. 6

        B.   The Asserted Claims Fail *Alice* Step Two Because They Are Directed To The Abstract
        Idea Of Creating and Displaying Webpages Based Upon Information From A User And
        Provide No Further Inventive Concept .................................................................... 12

        C.   Claim 1 Of The '397 Patent is Representative Of All Of The Other Asserted Claims In
        The '397 And '168 Patents ................................................................................ 13

        D.   The Report And Recommendation In The Eastern District Of Texas Supports A Finding
        That The Asserted Claims Are Directed To The Abstract Idea Of Creating And Displaying
        Webpages Based Upon Information From A User .................................................... 17

V.      CONCLUSION .................................................................................................... 19

i

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Alice Corp. v. CLS Bank Int'l,*

4

— U.S. —, 134 S. Ct. 2347 189 L.Ed.2d 296 (2014) ............................................................. 5, 9

5

*Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.,*

6

687 F.3d 1266 (Fed. Cir. 2012) ................................................................................................. 5

7

*Bilski v. Kappos,*

561 U.S. 593 S.Ct. 3218, 177 L.Ed.2d 792 (2010) ................................................................... 5

8

*CLS Bank, Int'l v. Alice Corp.,*

9

717 F.3d 1269 (Fed. Cir. 2013) ................................................................................................. 5

10

*Gottschalk v. Benson,*

11

409 U.S. 63S. Ct. 253 L.Ed.2d 273 (1972) ............................................................................... 5

12

*Intellectual Ventures I LLC v. Capital One Bank (USA),*

13

792 F.3d 1363 (Fed. Cir. 2015) ........................................................................................ passim

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*

14

— U.S. —, 132 S.Ct. 1289 L.Ed.2d 321 (2012) ....................................................................... 5

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on Thursday, December 13, 2018 at 1:30 p.m. Defendant Patheon Systems, Inc. will and hereby does move the Court to dismiss Counts I and II of Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) because the asserted claims of U.S. Patent Nos. 6,546,397 and 7,594,168 are not subject matter eligible under 35 U.S.C. § 101 as a matter of law.

1

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the asserted claims of U.S. Patent Nos. 6,546,397 ("the '397 patent") and 7,594,168 ("the '168 patent") are directed to the abstract idea of <u>creating and displaying webpages based upon information from a user</u> with no further inventive concept and thus ineligible for patenting under 35 U.S.C. § 101 ("§ 101").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

The asserted claims of the '397 patent and the '168 patent are directed to the abstract idea of <u>creating and displaying webpages based upon information from a user</u> and therefore recite unpatentable subject matter under § 101.  There should be no debate that this is what the claims are directed to because this is how (1) Express Mobile has characterized the claims, (2) the Eastern District of Texas has characterized the claims, and (3) this Court has characterized the claims in a claim construction order.

The controlling authority holds that claims directed to the abstract idea of creating and displaying webpages based upon information from a user are ineligible.  In *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015), the Federal Circuit held that claims that were directed to the same underlying subject matter as the claims in the '397 and '168 patents were ineligible.  There is no meaningful distinction for purposes of a § 101 analysis between the claims in the '397 and '168 patents on the one hand and the claims that were found ineligible in the *Intellectual Ventures* case on the other hand.  Accordingly, the Court should dismiss Counts I and II of the First Amended Complaint because they are ineligible as a matter of law.

**II.      STATEMENT OF FACTS**

In the First Amended Complaint, Plaintiff asserts that Defendant infringes claims 1-6, 8-11, 14-15, 24-25, 35 and 37 of the '397 patent (Count I) and claims 1, 4 and 6 of the '168 patent (Count II).  Dkt. No. 24, pages 3, 19.   These patents are related because the '168 patent is a continuation of the '397 patent and claims priority to, and has the same specification as, the '197 patent.  Dkt. Nos. 24-1 and 24-2.  The priority date—*i.e.*, the date the application that led to the

2

'397 patent was filed—is December 2, 1999. *Id.* Claim 1 of the '397 patent reads:

> 1.   A method to allow users to produce Internet websites on and for computers having a browser and a virtual machine capable of generating displays, said method comprising:
>
> (a)   presenting a viewable menu having a user selectable panel of settings describing elements on a website, said panel of setting being presented through a browser on a computer adapted to accept one or more of said selectable settings in said panel as inputs therefrom, and where at least one of said user selectable settings in said panel corresponds to commands to said virtual machine;
>
> (b)   generating a display in accordance with one or more user selected settings substantially contemporaneously with the selection thereof;
>
> (c)   storing information representative of said one or more user selected settings in a database;
>
> (d)   generating a website at least in part by retrieving said information representative of said one or more user selected settings stored in said database; and
>
> (e)   building one or more webpages to generate said website from at least a portion of said database and at least one run time file, where said at least one run time file utilizes information stored in said database to generate virtual machine commands for the display of at least a portion of said one or more web pages.

Dkt. No. 24-1, 65:44-66:2.

This Court has construed the following terms in claim 1 of the '397 patent as follows:

- "virtual machine":  An abstract machine that is not built in hardware but is emulated in software;

- "at least one run time file":  One or more files, including a run time engine[1], that are downloaded or created, and executed by a browser to display a webpage when the browser is pointed to a web page;

---

[1] The Court separately construed "run time engine" as:  "A file that is executed at runtime that reads information from the database and generates commands to display a webpage or website." Ex. 1, Markman Order, pages 7-8.  All cites to exhibits ("Ex.") are cites to the exhibits attached to the Declaration of Marc Belloli in Support of Defendant's Motion to Dismiss filed concurrently with this brief.

3

- "database":  An electronic information storage system offering data storage and retrieval;
- "substantially contemporaneously":  "occurring immediately after."

Ex. 1, Markman Order, pages 6, 8, 9 and 11.

As demonstrated in the Argument section below, claim 1 of the '397 patent is representative of the other asserted claims in the related '168 and '397 patents for purposes of a § 101 analysis.

Plaintiff has characterized the asserted claims as directed to the idea of <u>creating and displaying webpages based upon information from a user</u>:  "The invention here allows users to define a web page as a set of user-selected elements and settings; that information can be stored efficiently in a database and utilized later by a run time engine and 'virtual machine' to reproduce the web page seamlessly across multiple platforms."[2]

The Eastern District of Texas has characterized the asserted claims as directed to the idea of <u>creating and displaying webpages based upon information from a user</u>:  "First, the claims appear to address a problem particular to the internet:  dynamically generating websites and displaying web pages based on stored user-selected settings."[3]

This Court has characterized the asserted claims as directed to the idea of <u>creating and displaying webpages based upon information from a user</u>:  "The inventive methodology purportedly described in the patents involves building a web page by defining it as a set of user-selected 'objects' and/or 'settings.'  The result is not a markup language code file for the web page, but instead a collection of user selected objects and object attributes.  These can be saved in a database, for ease of access and efficient storage."[4]

## III.    THE § 101 ANALYSIS

In the *Intellectual Ventures* case, the Federal Circuit summarized the § 101 analysis as follows:

---

[2] Ex. 2, page 1.
[3] Dkt. No. 24-3, page 1 (*Express Mobile, Inc. v. KTree Computer Solutions, Inc.,* Case No. 2:17-cv-00128-JRG-RSP, Dkt. No. 29).
[4] Ex. 1, Markman Order, page 2.

4

An invention is patent-eligible if it fits into one of four statutory categories: processes, machines, manufactures, and compositions. 35 U.S.C. § 101. But there is an implicit exception. 'Laws of nature, natural phenomena, and abstract ideas are not patentable.' *Alice Corp. v. CLS Bank Int'l*, — U.S. —, 134 S. Ct. 2347, 2354, 189 L.Ed.2d 296 (2014) (citations omitted). To determine whether an invention claims ineligible subject matter, we engage in a two-step process. First, 'we determine whether the claims at issue are directed to one of [the] patent-ineligible concepts'—laws of nature, natural phenomena, or abstract ideas. *Id.* at 2355. 'The 'abstract ideas' category embodies 'the longstanding rule' that '[a]n idea of itself is not patentable.'' *Id.* (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67, 93 S. Ct. 253, 34 L.Ed.2d 273 (1972)). An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet. *See Alice*, 134 S.Ct. at 2358 (limiting an abstract idea to a particular technological environment, such as a computer, does not confer patent eligibility); *Bilski v. Kappos*, 561 U.S. 593, 612, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010) ('[L]imiting an abstract idea to one field of use . . . d[oes] not make the concept patentable.').

If we determine that the patent is drawn to an abstract idea or otherwise ineligible subject matter, at a second step we ask whether the remaining element, either in isolation or combination with the non-patent-ineligible elements, are sufficient to ''transform the nature of the claim' into a patent-eligible application.' *Alice*, 134 S. Ct. at 2358 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, — U.S. —, 132 S.Ct. 1289, 1297, 182 L.Ed.2d 321 (2012)). Put another way, there must be an 'inventive concept' to take the claim into the realm of patent-eligibility. *Id.* at 2355. A simple instruction to apply an abstract idea on a computer is not enough. *Alice*, 134 S.Ct. at 2358 ('[M]ere recitation of a generic computer cannot transform a patent-ineligible idea into a patent-eligible invention. Stating an abstract idea 'while adding the words 'apply it' is not enough for patent eligibility.'' (quoting *Mayo*, 132 S.Ct. at 1294)).

Nor, in addressing the second step of *Alice*, does claiming the improved speed or efficiency inherent with applying the abstract idea on a computer provide a sufficient inventive concept. *See Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ('[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter.'); *CLS Bank, Int'l v. Alice Corp.*, 717 F.3d 1269, 1286 (Fed. Cir. 2013) (en banc) *aff'd*, — U.S. —, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014) ('[S]imply appending generic computer functionality to lend speed or efficiency to the performance of an otherwise abstract concept does not meaningfully limit claim scope for purposes of patent eligibility.

*Intellectual Ventures*, 792 F.3d at 1366-67.

5

1

**IV.    ARGUMENT**

2

      **A.    The Asserted Claims Fail *Alice* Step One Because They Are Directed To The Abstract Idea Of Creating and Displaying Webpages Based Upon Information From A User**

3

4

      The asserted claims of the '397 and '168 patents are drawn to the abstract idea of <u>creating</u>

5

<u>and displaying webpages based upon information from a user</u>.  This is true whether the individual

6

claims are viewed as a whole or whether the individual limitations of the claims are examined

7

separately.

8

      Using claim 1 of the '397 patent as an example, the preamble is drawn to the abstract idea

9

of <u>creating and displaying webpages based upon information from a user</u>:

10

      A method to allow users to produce Internet websites on and for computers having
a browser and a virtual machine capable of generating displays, said method
comprising:

11

12

Dkt. No. 24-1, 65:44-46.  The preamble is very clear in this regard as it states that this claim is a

13

method to "allow users to produce Internet websites on and for computers having a browser."

14

That the preamble recites a "virtual machine" does not change the fact that this claim element is

15

drawn to the abstract idea because this Court construed "virtual machine" to be a software

16

"abstract[ion]" of a piece of computer hardware.  Ex. 1, Markman Order, page 6.  In other words,

17

the virtual machine is just the software used to carry out the abstract idea, which reinforces that

18

the preamble is directed to a user building and displaying a webpage on a computer and nothing

19

more.

20

      Limitation (a) of claim 1 of the '397 patent is drawn to the abstract idea of <u>creating</u>

21

<u>and displaying webpages based upon information from a user</u>:

22

23

    (a)    presenting a viewable menu having a user selectable panel of settings
describing elements on a website, said panel of setting being presented through a
browser on a computer adapted to accept one or more of said selectable settings in
said panel as inputs therefrom, and where at least one of said user selectable
settings in said panel corresponds to commands to said virtual machine;

24

25

26

Dkt. No. 24-1, 65:47-54.  Here, there is simply a menu of available settings that the user can

27

select from to build his/her webpage and the setting(s) (information) selected by the user can be

28

used by the "virtual machine" (the software) to build the webpage.  Thus, limitation (a) is

6

presenting a menu of information that the user will select to have his/her webpage created, which is exactly the abstract idea that underlies the claim.

Limitation (b) of claim 1 of the '397 patent is drawn to the abstract idea of <u>creating and displaying webpages based upon information from a user</u>:

> (b)   generating a display in accordance with one or more user selected settings substantially contemporaneously with the selection thereof;

Dkt. No. 24-1, 65:55-57.  Here, a display is generated based on the setting(s) the user selects and this will later be used to build the webpage.  This is undoubtedly directed to the idea of creating and displaying webpages based upon information from a user.  Moreover, that this step is done "substantially contemporaneously" does not change the fundamental character of this limitation (or the claim) because all this limitation means—per the Court's claim construction order—is that the "generating" is "occurring immediately after" the user selects certain information.  This simply reinforces that a computer is responding to the user selecting information and displaying that selected information which is part and parcel of a webpage created based upon input from a person.

Limitation (c) of claim 1 of the '397 patent is drawn to the abstract idea of <u>creating and displaying webpages based upon information from a user</u>:

> (c)   storing information representative of said one or more user selected settings in a database;

Dkt. No. 24-1, 65:58-59.  Here, the information the user provided when it selected the setting(s) is saved in a database so it can be used to build and display a webpage.  Again, this cannot be viewed as directed to anything other than the abstract idea of creating and displaying webpages based upon information from a user.  Moreover, using a database to save the user-provided information that will be used to build and display the webpage does not make the claim drawn away from the abstract idea.  Indeed, the Court—at Plaintiff's request—construed "database" to be any "electronic information storage system offering data storage and retrieval," and thus a database is any computer that stores data that can be retrieved.   Ex. 1, Markman Order, page 9.

Limitation (d) of claim 1 of the '397 patent is drawn to the abstract idea of <u>creating</u>

7

and displaying webpages based upon information from a user:

> (d) generating a website at least in part by retrieving said information representative of said one or more user selected settings stored in said database;

Dkt. No. 24-1, 65:60-62.  Here, the webpage is generated (with no explanation as to "how") based on information provided from the user that was stored in the database.  This element is essentially the abstract idea verbatim.

Limitation (e) of claim 1 of the '397 patent is drawn to the abstract idea of creating and displaying webpages based upon information from a user:

> (e) building one more webpages to generate said website from at least a portion of said database and at least one run time file, where said at least one run time file utilizes information stored in said database to generate virtual machine commands for the display of at least a portion of said one or more web pages.

Dkt. No. 24-1, 65:63-66:2.  Here, the webpage is built based upon the information selected by a user and a "run time file" that utilizes that information to "generate virtual machine commands" that display the webpage.  All of this is fundamentally drawn to the idea of creating and displaying webpages based upon user-selected information and does so generically "on a computer."  As discussed above, using a so-called virtual machine does not change the character of the claim or what it is drawn to given that a virtual machine was construed as a software abstraction of a computer.  Ex. 1, Markman Order, page 6.  Likewise a "run time file" which is based on a "run time engine"—per the Court's claim construction order—is simply a file used when a webpage is going to be "run" that "facilitates" retrieval of the information used to build the webpage and is downloaded when a browser is pointed to a webpage.  *Id.*, pages 7-8.  None of this changes the fundamental nature of the claims and it is hard to image how *any* webpage could be built without retrieval of the information used to build the webpage for display.  Plaintiff does not claim to have invented creating or displaying webpages, nor could it.

Viewing the preamble and limitations (a)-(e) as a whole it is clear that the '397 patent is drawn to the abstract idea of creating and displaying webpages based upon information from a user.  The various steps of the method provide a linear progression of the user selecting the information that will be used to build the webpage and then the webpage is generated using

8

1     generic computer hardware and software that could be used to build *any* webpage.   The

2     specification is clear that webpages and the Internet existed long before the priority date of

3     December 2, 1999.  *See*, *e.g.*, Dkt. No. 24-1, 5:40-47.

4         That the alleged invention is nothing more than creating and displaying webpages based

5     upon information from a user is manifest in the claims themselves.  Indeed, each step is part and

6     parcel of creating and displaying a webpage based on user information.  Moreover, as discussed

7     in the Statement of Facts, Plaintiff, the Eastern District of Texas, and this Court have all

8     characterized the claims as being directed to the underlying abstract idea of creating and

9     displaying webpages based upon information from a user.  Ex. 2, page 1; Dkt. No. 24-3, page 1;

10     Ex. 1, Markman Order, page 2.  Accordingly, there should be no debate that the claims are

11     directed to creating and displaying webpages based upon information from a user.

12         Assuming the Court agrees that the claims are directed to creating and displaying

13     webpages based upon information from a user, the Court should then find that the claims are

14     directed to an abstract idea and fail *Alice* step one in accord with the *Intellectual Ventures* case.

15     *Intellectual Ventures*, 792 F.3d at 1369-71.

16         In the *Intellectual Ventures* case, the Federal Circuit found that the claims of U.S. Patent

17     No. 7,603,382—which were found to be directed to creating and displaying a webpage based on

18     information from a user—were ineligible under § 101.  *Id.*  "The '382 patent, entitled 'Advanced

19     Internet Interface Providing User Display Access of Customized Webpages,' claims methods and

20     systems for providing customized web page content to the user as a function of user-specific

21     information and the user's navigation history."  *Id.* at 1365.  Like the patents that are the subject

22     of this motion, that claim 1 of the '382 patent was directed to creating and displaying webpages

23     based upon information from a user was manifest from the claim language:

24
25        A system for providing web pages accessed from a web site in a manner which presents the web pages tailored to an individual user, comprising:

26          an interactive interface configured to provide dynamic web site navigation data to the user, the interactive interface comprising:

27
28          a display depicting portions of the web site visited by the user as a function of

9

the web site navigation data; and

a display depicting portions of the web site visited by the user as a function of the user's personal characteristics.

*Id.* at 1369.

If anything, the subject matter in the '382 patent is a more specific and concrete way of building a webpage based upon information from a user given the existence of an "interactive interface configured to provide dynamic web site navigation data to the user" which is used to tailor webpages based on web site navigation data, webpages visited by the user and the user's personal characteristics.  None of these features are part of Plaintiff's patents which merely provide for building and displaying webpages based upon any kind of setting or information provided by the user.

The Federal Circuit found that claim 1 of the '382 patent failed *Alice* step one because tailoring content based upon information provided by or about a user is a "fundamental practice" that is "long prevalent":

There is no dispute that newspaper inserts had often been tailored based on information known about the customer—for example, a newspaper might advertise based on the customer's location.  Providing this minimal tailoring—e.g., providing different newspaper inserts based upon the location of the individual—is an abstract idea.
\* \* \*
There can be no doubt that television commercials for decades tailored advertisements based on the time of day during which the advertisement was viewed.  For example, a television channel might choose to present a commercial for children's toys during early morning cartoon programs but beer during a sporting event.  An advertisement taking into account the time of day and tailoring the information presented to the user based on that information is another 'fundamental practice long prevalent in our system ….' *Alice*, 134 S. Ct. at 2356.

*Id.*

Just like in the *Intellectual Ventures* case, creating and displaying a webpage based upon user selected settings (which can describe any "element[ ] on a website") as recited in claim 1 of the '397 patent is an ineligible abstract idea that fails *Alice* step one.  *Id.* at 1369-70.  That Plaintiff's claims are ineligible is further reinforced by the fact that the claims at issue in the '382

10

1    patent have an earlier priority date (May 26, 1998) than Plaintiff's claims (December 2, 1999).

2    Ex. 3, '382 patent.

3         While the *Intellectual Ventures* case is directly on point, another case previously before

4    this Court bears strong resemblance to this case and demonstrates why the asserted claims of the

5    '397 and '168 patents are invalid.  One of the patents at issue in *OpenTV, Inc. v. Netflix Inc.*, Case

6    No. 14-cv-01525-RS (N.D. Cal.) was U.S. Patent No. 7,305,691, entitled "System and method for

7    providing targeted programming outside of the home."[5]   The claims of this patent were directed

8    to allowing "advertisers to direct customized ads to individuals based on data gathered as to those

9    individual's specific interests and possible needs."  The context of this patent was television

10   programming.  The '691 patent (providing targeting TV ads based upon information about a user)

11   is highly analogous to the '397 and '168 patents (building and displaying a webpage based on

12   information provided by a user).

13        The Court found the claims of OpenTV's '691 patent ineligible, holding, among other

14   things:

15        Netflix's characterization of this patent as embodying only an 'abstract idea' is
          accurate.  The concept of gathering information about one's intended market and
16        attempting to customize the information then provided is as old as the saying,
          'know your audience.'  Like the concepts in *Bilski* and *Alice*, the mere fact that
17        generic computer processors, databases, and internet technology, can now be used
          to implement the basic idea, with certain perceived greater advantages, does not
18        give rise to a patentable method.
          * * *
19        . . . the claims unquestionably do no more than 'simply instruct the practioner to
          implement the abstract idea with routine, conventional activity.'  *Ultramercial,*
20        *Inc.* 2014 WL 5904902 at *5.  To the extent the patent should be understood as
          teaching use of internet and related technology, however, even such additional
21        limitations cannot save the claims. *Id.* ('the use of the Internet is not sufficient to
          save otherwise abstract claims form ineligibility under § 101.
22

23   Ex. 4, page 10.  The very same analysis and holdings apply here to Plaintiff's '397 and '168

24   patents.

25        There is no meaningful distinction between Plaintiff's claims in the '397 and '168 patents

26   and the claims that were invalidated by the Federal Circuit in the *Intellectual Ventures* case and

27

28   _____
     [5] Ex. 4, page 1.

                                                11

by this Court in the *OpenTV* case. Plaintiff's claims fail *Alice* step one.

### B. The Asserted Claims Fail *Alice* Step Two Because They Are Directed To The Abstract Idea Of Creating and Displaying Webpages Based Upon Information From A User And Provide No Further Inventive Concept

Assuming the Court finds that the asserted claims of the '397 and '168 patents are drawn to the abstract idea of creating and displaying webpages based upon information from a user, there is no further inventive concept in the asserted claims that makes them subject matter eligible under *Alice* step two. Moreover, there is no inventive concept whether the individual claims are viewed as a whole or whether the individual limitations of the claims are examined separately.

Again, using claim 1 of the '397 patent as an example, and as discussed above, each and every claim limitation is part and parcel of creating and displaying a webpage based on user information. Moreover, there is nothing in any of the limitations that goes beyond the abstract idea because the terms "virtual machine," "run time engine" and "run time file" were construed at Plaintiff's urging as generic software used to render webpages in connection with a generic "database" based upon information that is provided by a user. Ex. 1, Markman Order, pages 5-9. Given that these constructions were made largely at Plaintiff's urging, Plaintiff cannot run from them now, even on a motion to dismiss. Viewed as an ordered combination, the limitations of claim 1 of the '397 patent recite a method for a user to build and display a webpage based on information the user provides (which is true of *all* webpages) using "software" and an electronic database and nothing further. Accordingly, there is no inventive concept that can be identified in claim 1 of the '397 patent and this claim is ineligible under step two of the *Alice* test.

The *Intellectual Ventures* case is again instructive. There the Federal Circuit found that it was irrelevant that the claimed software acted as the "brains" of the system to tailor webpages based on information concerning the user and found there to be no inventive concept for a claim that is essentially the same subject matter as claim 1 of the '397 patent:

> At Intellectual Ventures' urging, 'interactive interface' was broadly construed by the district court to mean 'a selectively tailored medium by which a web site user communicates with a web site information provider.' J.A. 756. Intellectual Ventures describes the 'interactive interface' as 'tasked with tailoring information and providing it to the user.' Appellant's Br. 43. Elsewhere, Intellectual Ventures

12

equates the 'interactive interface' with the 'web page manager,' which 'tailors the web page to the specific individual based on the profile.' At oral argument, Intellectual Ventures described the interactive interface as 'software' and agreed that it 'is basically the brains of the outfit.' Oral Argument T. 16:24-16:40. Nowhere in these vague and generic descriptions of the 'interactive interface' does Intellectual Ventures suggest an 'inventive concept.' *Alice*, 134 S.Ct. at 2355. Rather, the 'interactive interface' simply describes a generic web server with attendant software, tasked with providing web pages to and communicating with the user's computer.

Steps that do nothing more than spell out what it means to 'apply it on a computer' cannot confer patent-eligibility. *Alice*, 134 S.Ct. at 2359 (warning against a § 101 analysis that turns on the draftsman's art (citing *Flook*, 437 U.S. at 593, 98 S.Ct. 2522)). **Requiring the use of a 'software' 'brain' 'tasked with tailoring information and providing it to the user' provides no additional limitation beyond applying an abstract idea, restricted to the Internet, on a generic computer**.

*Intellectual Ventures*, 792 F.3d at 1370-71 (emphasis added).

If the claims at issue in the *Intellectual Ventures* case had no inventive concept, the claims at issue here (which post-date the claims in the *Intellectual Ventures* case) cannot be found—as a matter of law—to have an inventive concept either. *See also* Ex. 4, page 10 (this Court's decision concerning the analogous '691 patent in the *OpenTV* case).

Under the two-step § 101 analysis, the asserted claims concern creating and displaying webpages based upon information from a user and nothing and are thus ineligible.

### C.     Claim 1 Of The '397 Patent is Representative Of All Of The Other Asserted Claims In The '397 And '168 Patents

Just as claim 1 of the '397 patent is directed to the abstract idea of <u>creating and displaying webpages based upon information from a user</u> with no further inventive concept, so are all of the other asserted claims of the '397 and '168 patents. Accordingly, claim 1 of the '397 patent is representative.

There are three asserted independent claims in the '397 patent—claims 1, 2 and 37. Claim 1 is written as a method claim and claim 2 is written as a corresponding apparatus claim:

| 1.  A method to allow users to produce Internet websites on and for computers having a browser and a virtual machine capable of generating displays, said method comprising: | 2.     An apparatus for producing Internet websites on and for computers having a browser and a virtual machine capable of generating displays, said apparatus comprising: |
|---|---|

13

| | |
|---|---|
| (a)   presenting a viewable menu having a user selectable panel of settings describing elements on a website, said panel of settings being presented through a browser on a computer adapted to accept one or more of said selectable settings in said panel as inputs therefrom, and where at least one of said user selectable settings in said panel corresponds to commands to said virtual machine; | (a)  an interface to present a viewable menu of a user selectable panel of settings to describe elements on a website, said panel of settings being presented through a browser on a computer adapted to accept one or more of said selectable settings in said panel as inputs therefrom, and where at least one of said user selectable settings in said panel corresponds to commands to said virtual machine; |
| (b)   generating a display in accordance with one or more user selected settings substantially contemporaneously with the selection thereof; | (b)   a browser to generate a display in accordance with one or more user selected settings substantially contemporaneously with the selection thereof; |
| (c)   storing information representative of said one or more user selected settings in a database; | (c)   a database for storing information representative of said one or more user selected settings; and |
| (d) generating a website at least in part by retrieving said information representative of said one or more user selected settings stored in said database; and | (d) a build tool having at least one run time file for generating one or more web pages, said run time file operating to utilize information stored in said database to generate commands to said virtual machine for generating the display of at least a portion of said one or more web pages. |
| (e)   building one more web pages to generate said website from at least a portion of said database and at least one run time file, where said at least one run time file utilizes information stored in said database to generate virtual machine commands for the display of at least a portion of said one or more web pages. | |

Dkt. No. 24-1, 65:44-66:23.  Claims 1 and 2 of the '397 patent are almost verbatim the same—from the preamble to the menu limitation to the display limitation to the database limitation to the building and generating webpage limitations.  *Id.*

Likewise, claim 37 contains the basic limitations as claims 1 and 2, just slightly reorganized:

| | |
|---|---|
| 1.  A method to allow users to produce Internet websites on and for computers having a browser and a virtual machine capable of generating displays, said method comprising: | 37.   An apparatus for producing Internet websites having one or more web pages on and for a computer having a browser and a virtual machine capable of generating a display, said |

14

MOTION TO DISMISS – 3:18-CV-04688-RS

| | apparatus comprising: |
|---|---|
| (a)   presenting a viewable menu having a user selectable panel of settings describing elements on a website, said panel of setting being presented through a browser on a computer adapted to accept one or more of said selectable settings in said panel as inputs therefrom, and where at least one of said user selectable settings in said panel corresponds to commands to said virtual machine; | (a)   an interface configured for building a website through control of website elements, said interface being operable through the browser on the computer to:<br>present a viewable menu of a user selectable panel of settings, accept a plurality of settings from said user selectable panel of settings to form an assembly of settings, and |
| (b)  generating a display in accordance with one or more user selected settings substantially contemporaneously with the selection thereof; | generate the display in accordance with said assembly of settings contemporaneously with the acceptance thereof, at least one of said user selectable settings of said panel of settings being operable to generate said display through commands to said virtual machine; |
| (c)   storing information representative of said one or more user selected settings in a database; | (b)  an internal database associated with said interface for storing information representative of one or more of said assembly of settings for controlling elements of the website; and |
| (d) generating a website at least in part by retrieving said information representative of said one or more user selected settings stored in said database; and | (c)   a build tool to construct one or more web pages of said website having:<br>an external database containing data corresponding to said information stored in said internal database, and<br>one or more run time files, |
| (e)   building one more web pages to generate said website from at least a portion of said database and at least one run time file, where said at least one run time file utilizes information stored in said database to generate virtual machine commands for the display of at least a portion of said one or more web pages. | where said run time files utilize information stored in said external database to generate virtual machine commands for the display of at least a portion of said one or more web pages. |

Dkt. No. 24-1, 65:44-66:2, 68:43-69:4.  Accordingly, just as claim 1 of the '397 patent is ineligible under § 101, so are independent claims 2 and 37.

The asserted dependent claims in the '397 patent—claims 3-6, 8-11, 14-15, 24-25 and 35, all of which depend from claim 2—do not fundamentally change the character or scope of the claims and are all directed to the abstract idea of creating and displaying

15

webpages based upon information from a user.  Dkt. No. 24-1, 66:3-68:42.  For example, claim 3 just specifies a certain type of database to be used in connection with claim 2.  *Id.* at 66:24-25.  Claims 4-6 just specify certain types of "elements" to be used in building the webpages in connection with claim 2.  *Id.* at 66:26-35.  The other dependent claims fair no better—all of the dependent claims are small tweaks on the elements already present in claim 2 of the '397 patent but none change what claim 2 is directed to.  Nor do they supply a concept (much less an inventive one) beyond what is already in claim 2 (nor could they because dependent claims narrow the scope of independent claims).

The three asserted claims in the '168 patent are ineligible under § 101 for the same reason as the claims of the '397 patent because they are directed to the same subject matter with no further inventive concept:

| '397 patent, claim 1 | '168 patent, claim 1 |
|---|---|
| 1.  A method to allow users to produce Internet websites on and for computers having a browser and a virtual machine capable of generating displays, said method comprising: | 1.   A system for assembling a web site comprising: a server comprising a build engine configured to: |
| (a)   presenting a viewable menu having a user selectable panel of settings describing elements on a website, said panel of setting being presented through a browser on a computer adapted to accept one or more of said selectable settings in said panel as inputs therefrom, and where at least one of said user selectable settings in said panel corresponds to commands to said virtual machine; | accept user input to create a web site, the web site comprising a plurality of web pages, each web page comprising a plurality of objects, |
|  | accept user input to associate a style with objects of the plurality of web pages, wherein each web page comprises at least one button object or at least one image object, and wherein the at least one button object or at least one image object is associated with a style that includes values defining transformations and time lines for the at least one button object or at least one image object; and wherein each web page is defined entirely by each of the plurality of objects comprising that web page and the style associated with the object, |
| (b)  generating a display in accordance with one or more user selected settings substantially contemporaneously with the selection thereof; |  |
| (c)   storing information representative of said one or more user selected settings in a database; |  |
| (d) generating a website at least in part by retrieving said information representative of | produce a database with a multidimensional array comprising the objects that comprise the web site including data |

16

| | |
|---|---|
| said one or more user selected settings stored in said database; and<br><br>(e)   building one more web pages to generate said website from at least a portion of said database and at least one run time file, where said at least one run time file utilizes information stored in said database to generate virtual machine commands for the display of at least a portion of said one or more web pages. | defining, for each object, the object style, an object number, and an indication of the web page that each object is a part of, and<br>provide the data based to a server accessible to web browser;<br><br>wherein the database is produced such that a web browser with access to a runtime engine is configured to generate the web-site from the objects and style data extracted from the provided database. |

Dkt. No. 24-1, 65:44-66:2, Dkt. No. 24-2, 64:48-65:7.

Like all of the claims of the '397 patent, claim 1 of the '168 patent is directed to creating and displaying webpages based upon information from a user using a database, a runtime engine and/or runtime file, and a virtual machine (which is instead referred to as a "build engine" in claim 1 of the '168 patent).  Moreover, there is nothing in claim 1 of the '168 patent that is fundamentally different subject-matter wise than the independent claims of the '397 patent.  Finally, the only two asserted dependent claims of the '168 patent—claims 4 and 6—simply specify certain information that must be used to build the webpage (claim 4) and how the information is to be stored in the database (claim 6), but these claims remain directed to creating and displaying webpages based upon information from a user, with no further inventive concept.  Dkt. No. 24-2, 66:4-5, 66:9-11.

Claim 1 of the '397 patent is representative of all asserted claims in Counts I and II of the First Amended Complaint.

**D.      The Report And Recommendation In The Eastern District Of Texas Supports A Finding That The Asserted Claims Are Directed To The Abstract Idea Of Creating And Displaying Webpages Based Upon Information From A User**

Plaintiff may argue that a Report and Recommendation from Magistrate Judge Payne in the Eastern District of Texas evinces its belief that the asserted claims of the '397 and '168

17

1   patents are subject matter eligible under § 101.  *See* Dkt. No. 24-3.[6]  It does not.  Rather, that

2   Report and Recommendation demonstrates precisely why the asserted claims of the '397 and '168

3   patents are subject matter ineligible.  As discussed above, Magistrate Judge Payne found that

4   these claims were directed to creating and displaying webpages based upon information from a

5   user.  *Id.* ("First, the claims appear to address a problem particular to the internet:  dynamically

6   generating websites and displaying web pages based on stored user-selected settings.").  This is

7   an ineligible abstract idea per the *Intellectual Ventures* case.  *Intellectual Ventures*, 792 F.3d at

8   1369-71.

9        While Magistrate Judge Payne was correct in finding that the '397 and '168 patents were

10   directed to creating and displaying webpages based upon information from a user, his

11   recommendation to deny the defendant's motion to dismiss was incorrect.  This is because

12   Magistrate Judge Payne did not address the *Intellectual Ventures* case cited extensively here.

13   Moreover, Magistrate Judge Payne's recommendation was to deny the § 101 motion without

14   prejudice because claim construction might aid the inquiry.  Dkt. No. 24-3, page 2.  Here, the

15   parties already have the benefit of this Court's constructions on the key terms.  And, just as

16   important, Judge Payne was misled by Plaintiff in the need for claim construction because

17   Plaintiff provided vastly different constructions to Judge Payne in advocating against a motion to

18   dismiss under § 101 than the constructions Plaintiff advocated for (and in fact received) in this

19   Court.  *Compare* Ex. 2, page 30 *with* Ex. 1, Markman Order, pages 5-13.

20        In short, Magistrate Judge Payne correctly identified the gravamen of the asserted claims

21   and what they are directed to.  He erred in recommending denial of the motion because he was

22   misinformed by Plaintiff as to what constructions Plaintiff believed applied to the asserted claims,

23   presumably so that Plaintiff could survive the § 101 motion in Texas and then advance different

24   constructions in this Court.

25

26

27   [6] Express Mobile dismissed the case without prejudice prior to any party filing objections to the
     Report and Recommendation and prior to Judge Gilstrap considering the Report and
28   Recommendation and issuing a final order on the Section 101 motion.

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V.      CONCLUSION**

For at least the foregoing reasons, the Court should find that the asserted claims of the '397 and '168 patents are ineligible under § 101 and dismiss Counts I and II of the First Amended Complaint with prejudice.


Dated: November 7, 2018                    FEINBERG DAY ALBERTI LIM & BELLOLI LLP

                                           By: /s/ *Elizabeth Day*

                                           Attorneys for Defendant
                                           Pantheon Systems Inc.