United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EXPRESS MOBILE, INC.,
Plaintiff,
v.
CODE AND THEORY LLC,
Defendant.

Case No. 18-cv-04679-RS

EXPRESS MOBILE, INC.,
Plaintiff,
v.
PANTHEON SYSTEMS INC.,
Defendant.

Case No. 18-cv-04688-RS

**ORDER DENYING MOTIONS TO DISMISS**

I. INTRODUCTION

These are two in a number of related patent cases involving allegations that the various defendants infringe U.S. Patent Nos. 6,546,397 (the ’397 patent) and 7,594,168 (the ’168 patent), which share a specification. Certain terms of the patents have been the subject of claim construction by this court in *X.Commerce, Inc. v. Express Mobile, Inc.*, Case No. 17-cv-02605-RS, a declaratory relief action where the patent holder, plaintiff Express Mobile in these cases, appears as the defendant. Claim construction has also taken place in at least one other district in other litigation brought by Express Mobile on the patents.

Defendants in these two actions move to dismiss contending the patent claims are drawn only to abstract ideas, ineligible for protection under Section 101 of the Patent Act, as elucidated in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) and its progeny. Because the patents purport to describe a novel technological approach to creating websites on the internet, defendants' characterization of the patents as claiming only an abstract idea fails, and the motions to dismiss must be denied.

## II.  BACKGROUND

As described in the patents' shared specification and explained in the briefing, Express Mobile contends the patents "bring together a number of disparate ideas and concepts, to create a new paradigm for creating, storing, and building web pages." According to Express Mobile, prior to the invention of the patents, web pages were created, stored and rendered in a fundamentally different manner. Individual web pages were typically created by either programming directly in HTML or JavaScript code, or by using a visual editor that output HTML formatted files. These approaches allegedly were cumbersome and inflexible, in various respects.

The inventive methodology purportedly described in the patents involves building a web page by defining it as a set of user-selected "objects" and/or "settings." The result is not a markup language code file for the web page, but instead a collection of user selected objects and object attributes. These can be saved in a database, for ease of access and efficient storage. Express Mobile explains that because complete code files for each page do not need to be stored, the page structure—the full HTML code itself—is created on the fly each time the page is loaded in a user's Web browser. This is achieved in part through a browser-appropriate "run time engine" and related files.

Defendants contend claim 1 of the '397 patent is representative of both patents for purposes of *Alice* analysis.[1] It provides:

---

[1] Express Mobile asserts claim 1 is not representative, and discusses at least one other claim (Claim 1 of the '168) patent, but it has not shown the result would be any different for any of the

> A method to allow users to produce Internet websites on and for computers having a browser and a virtual machine capable of generating displays, said method comprising:
>
> (a) presenting a viewable menu having a user selectable panel of settings describing elements on a website, said panel of setting being presented through a browser on a computer adapted to accept one or more of said selectable settings in said panel as inputs therefrom, and where at least one of said user selectable settings in said panel corresponds to commands in said virtual machine;
>
> (b) generating a display in accordance with one or more user selected settings substantially contemporaneously with the selection thereof;
>
> (c) storing information representative of said one or more user selected settings in a database;
>
> (d) generating a website at least in part by retrieving said information representative of said one or more user selected settings stored in said database; and
>
> (e) building one or more webpages to generate said website from at least a portion of said database and at least one run time file, where said at least one run time file utilizes information stored in said database to generate virtual machine commands for the display of at least a portion of said one or more web pages.

## III. DISCUSSION

As explained in *Alice*, the Supreme Court has "interpreted § 101 and its predecessors ... for more than 150 years" to "'contain[ ] an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable.' " The *Alice* court applied a two-step framework for determining patent eligibility, previously articulated in *Mayo Collaborative Servs. v. Prometheus Labs.*, Inc., 132 S.Ct. 1289 (2012):

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is

---

other asserted claims.

> there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an "inventive concept"—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.

*Alice*, 134 S.Ct. at 2355.

*Alice* also explained, "The 'abstract ideas' category embodies "the longstanding rule that '[a]n idea of itself is not patentable.' " *Id*. at 2355; *see also Le Roy v. Tatham*, 14 How. 156, 175, 14 L.Ed. 367 (1853). ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right").

*Alice* repeated the caution given in *Mayo*, however, that the exclusion for "abstract ideas" must not be applied too broadly, "we tread carefully in construing this exclusionary principle lest it swallow all of patent law." 134 S.Ct. at 2354 (*citing Mayo*, 132 S.Ct. at 1293–1294.) At some level, "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 132 S.Ct. at 1293.

On the facts before it, the *Alice* court also expressly declined to "labor to delimit the precise contours of the 'abstract ideas' category." 134 S.Ct. at 2357. Instead, it merely found that the concept of providing an "intermediated settlement" was not meaningfully distinguishable from the idea of "risk hedging" at issue in *Bilski v. Kappos*, 561 U.S. 593 (2010). In both instances, the idea involved was "a fundamental economic practice long prevalent in our system of commerce." *Id*. at 2356.

Here, defendants rely primarily on *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015). They argue the patents here are not meaningfully distinguishable from one held invalid in that case, U.S. Patent No. 7,603,382, entitled "Advanced Internet Interface Providing User Display Access of Customized Webpages." Defendants' insistence to the contrary notwithstanding, the patents are simply not directly comparable. The '382 patent in *Intellectual Ventures* "generally relate[d] to customizing web page content as a function of

navigation history and information known about the user." 792 F.3d at 1369. The representative claim described "[a] system for providing web pages accessed from a web site in a manner which presents the web pages tailored to an individual user." The *Intellectual Ventures* court had little trouble concluding that merely tailoring the information presented to a website user based on information about that user or when the website was being viewed represented patent-ineligible abstract ideas.

> This sort of information tailoring is "a fundamental . . . practice long prevalent in our system. . . ." . . . There is no dispute that newspaper inserts had often been tailored based on information known about the customer—for example, a newspaper might advertise based on the customer's location. Providing this minimal tailoring—e.g., providing different newspaper inserts based upon the location of the individual—is an abstract idea . . . .
>
> Tailoring information based on the time of day of viewing is also an abstract, overly broad concept long-practiced in our society. There can be no doubt that television commercials for decades tailored advertisements based on the time of day during which the advertisement was viewed.

*Id.*

The patents here are not comparable merely because they also involve webpages that reflect information provided by a "user." Indeed, the patents do not even involve the same category of "user"—here the "user" is the person who is trying to *create* webpages, in *Intellectual Ventures* the user is a person viewing the webpage to whom customized content will be delivered. The patents here are directed at a purportedly revolutionary technological solution to a technological problem—how to create webpages for the internet in a manner that permits "what you see is what you get" editing, and a number of other alleged improvements over the then-existing methodologies.

A more apt comparison is *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327 (Fed. Cir. 2016), which reversed a district court's finding of ineligibility under *Alice.* At issue in *Enfish* was "an innovative logical model for a computer database." *Enfish* supports the notion that a dividing line can be drawn between patents which merely describe using a computer and/or the internet to carry

out pre-existing and well-known tasks and techniques, and those that relate to the functioning of computers themselves. The former will virtually always fail under *Alice* unless some "inventive concept" can be found in the second step of the analysis; the latter are substantially less easily characterized as merely abstract ideas.

*Enfish* explains:

> The first step in the *Alice* inquiry in this case asks whether the focus of the claims is on the specific asserted improvement in computer capabilities (*i.e.*, the self-referential table for a computer database) or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool. As noted *infra*, in *Bilski* and *Alice* and virtually all of the computer-related § 101 cases we have issued in light of those Supreme Court decisions, it was clear that the claims were of the latter type—requiring that the analysis proceed to the second step of the *Alice* inquiry, which asks if nevertheless there is some inventive concept in the application of the abstract idea. *See Alice*, 134 S.Ct. at 2355, 2357–59. In this case, however, the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity.

822 F.3d at 1335–36.

*Enfish* drew a line between "improvement[s] to computer functionality itself," and "economic or other tasks for which a computer is used in its ordinary capacity." The court concluded:

> we find that the claims at issue in this appeal are not directed to an abstract idea within the meaning of *Alice*. Rather, they are directed to a specific improvement to the way computers operate . . . ."

*Id.* at 1336.

So too here.

Finally, to the extent that defendants are arguing that any potentially patent-eligible technological improvements set out in the specification are not reflected in the actual claims, dismissal under *Alice* is not appropriate, at least at this juncture. Although some claim construction has taken place, it simply cannot be said on the present record that the claims are drawn so broadly as to be divorced from the potentially patent-eligible purported technological improvements described in the specification. Accordingly, the motions to dismiss are denied.

**IT IS SO ORDERED**.

Dated: January 29, 2019

RICHARD SEEBORG
United States District Judge